May it please the Court, Dan Bagatelle on behalf of Google, with me is my colleague Robert Swanson. I'd like to start, if I may, with the construction of non-exhaustive search, because if you agree with us on that, it will simplify the rest of the appeal considerably. This is a case in which the BRI standard makes a difference. It's a case where there are multiple reasonable interpretations and not much to go on beyond the plain language. The term non-exhaustive search doesn't appear in the specification. It was added years into prosecution with no explanation of the definition. There's no ordinary meaning, single ordinary meaning. And just to be clear, the term exhaustive also does not appear in the specification? It doesn't. The patent does refer to the term linear search, but it doesn't clearly answer the relevant question for purposes of this appeal. So we think the right question is the BRI standard. Is there a reason to rule out our definition, either intrinsic or extrinsic evidence? I'll start with the claim language. You mentioned exhaustive search. Exhaustive means to go through completely, to use up entirely. In the case of this type of a search, it means that you're considering every single one and making sure you're going to get every possible match. In this case, there could be multiple matches, because we're not talking about just a search that gives you one right answer. This is a neighbor search. You can get multiple answers, and they may not be exact matches. So you can't just judge it by the first character. We used the example of Court of Appeals for the Federal Circuit in the database, and you it's not going to match. You're looking for the first word, it's not going to match. The first couple of characters may well be spurious. To get the right answer, you need to consider the whole thing. You have to consider it holistically. At least that's a reasonable interpretation of the claims, and there's nothing in the intrinsic or extrinsic evidence that suggests otherwise. I mentioned the... Let's say that you come up with a search, and Court of Appeals Federal Circuit comes up. Under your construction, does it stop there? It seems to me under your construction, you would have to go through and view all the data in there, and make sure that Judge Reyna is listed with all the judges, and make sure the address is correct, and that all the data within that particular result is correct or matches. Well that was our construction that you need to look at them. It may or may not match depending on whether it is a near neighbor or a neighbor search. For example, Federal Circuit will not exactly match Court of Appeals for the Federal Circuit, but it can be a near match. That's our point, that you can't just stop looking at one bit of data or one note. You have to consider more than that. There really isn't any reason in the specification to go otherwise. In terms of extrinsic evidence, the best the other side came up with was a Wikipedia definition of brute force search, which we'll call that equivalent to an exhaustive search. But what it says is, check to see whether each candidate's solution satisfies the search criteria. Well if anything, that helps us, because in the case of a search criteria where you're dealing with a neighbor search, you have to see whether it's going to match holistically, not just whether it's going to match literally by the first character or the first bit. I recognize the board did not credit our expert, but you don't need to rely on our expert. If you had a situation where there's no clear answer from the interviewee... Neither expert here pointed to anything in the art that suggested what the definition was, right? They're just opining as to what they thought. That was true of your expert as well as theirs, right? Largely. I think the other side, well, first of all, the board decided this at the institution phase, so their expert hadn't even opined at that point. It was just lawyer argument and in our case, an expert with a petition. The board did not credit our expert. They basically just said, we hadn't proven that you should include that particular element of the construction. It bought half of our construction but not the other half. The burden of proof wasn't on us. This was a legal issue governed by the BRI standard, and so if there are multiple reasonable interpretations... This is a difficult case in the sense that usually you have something in the intrinsic evidence that points you one way or the other, or there's a dictionary definition. If you don't have that, then you have to take the broadest interpretation. I think the board got a little messed up because... I want to come back to my question. Apart from the Wikipedia page, did either expert point to any documentation from the prior art suggesting what meaning this term should have? I don't recall any. That's why we're in a situation where you pretty much are going on the claim language, and if nothing rules out our reasonable interpretation, and again, you're dealing with a non-exhaustive search for a neighbor. It's not an exact search. You can't just stop at the first bit. At least we had a reasonable interpretation. If you agree with us, that's going to require reversal of the claim construction and remand for reconsideration under the correct claim construction. I believe that affects both Iwamura and Gios. I'm not even sure there'll be a dispute as to whether they disclosed non-exhaustive search under our interpretation. I acknowledge, though, that Conwell really went off at an orthogonal round, and if you would like, I can turn to Conwell, or I can go to Iwamura under the board's own construction, whichever you're on. Before you do that, let me ask you another question. The 441 pen, for example, it relates to identifying a work, such as a digital audio or video file, without needing to modify that work. It's looking for a work, a video file or a digital file, or let's say music. It seems to me that there you're talking about a return that's not necessarily the result of a search for data, and your construction seems to be focused more on data as opposed to a record. It seems to me, if you look at the patent at Appendix 99, Column 8, and starting with that whole language, 45 running into the next page, I think it's clear there that the patent is not speaking about data. In fact, it says that that's not what the patent is about, and it refers to things such as entries and walks away from having to make a binary search, just looking for zeros and ones as opposed to a note, a sound. Well, to some extent, it's dealing with some of the problems with existing ways to do searches. Some of this is a matter of semantics, whether you refer to it as data or records in a database. I've been trying to avoid some of the semantics and basically refer to it as, you've got to search on non-exhaustive features of a media work. That's the claim language for all of these. You're taking the media work, you're extracting certain features, which can be certain segments or it can be a mathematical manipulation, and then you're trying to see whether that matches something that the user inputs. Maybe they hum it, maybe they type it in, whatever. In that sense, the other side has been focusing on the term database. I agree, it's not really a question of database. Database isn't the claim term. The question is whether you're extracting features from this media work and you're trying to find a near match to it, or a non-exhaustive neighbor search for a near match of that item. We're not necessarily searching on the media works themselves. We're actually doing a search of the extracted features, and Iwamura is an example of that. Iwamura, you have this media work, and maybe it's got the first 100 notes of a passage of Beethoven or something like that. You enter a 10-note search. It's not going to be looking at all 100 notes. It's going to be looking at the manipulation of 1 through 10, 2 through 11, 3 through 12. It's a frame. It's going to be a moving frame. It's going to be looking at all the 10-note extracted features. In fact, in this case, they're only going to be looking at roughly 20% of them because it's looking for the ones that have aligned peaks. So 1 through 10, the peaks don't align. We're going to throw that out. 2 through 11, it doesn't align. We're going to throw that out. 3 through 12, ah, the peaks align. Therefore, we're going to search that one. Iwamura teaches you that you can throw out roughly 80%. That is a non-exhaustive search, even under the board's definition, because the extracted the 10-note sub-segments. It may ultimately identify the Beethoven work or it may identify the 100-note sequence, but what it's actually searching is those 10 notes. That somehow doesn't sound consistent with your argument as you're seeking to add an additional limitation to the board's construction. You're looking for all data within the possible matches. Yes. Well, okay. That's our claim construction. The argument I was just making was under the board's claim construction. Under our claim construction, we're basically trying to say when you're looking for a search of extracted features, if the extracted features are, for example, in these references, notes of a work, let's not call them data. Let's just call them notes. They could be adjusted notes. They could be relative pitches and that sort of thing. So they're adjustments of note data, or adjustments of notes. So you're going to see, does the first note match? Is that enough? Under their construction, that's enough. You can just say the first note doesn't match and throw it out. Under our construction, you need to consider it holistically. You take the extracted feature as a whole and compare it to each element. That's a possible match. In our view, you can't just stop at note one, letter one. The Federal Circuit is the easiest to understand. I'm a terrible singer. You wouldn't want to hear me sing. So I think if you were to stop at the F, you would get a spurious result. And that's why you want to look holistically. So I think I've explained Iwamura, I hope, to the Court's satisfaction. If you like, I can briefly touch on Conwell. The argument there is relatively straightforward. Conwell was a lookup in a large, sorted... Does Conwell get you anywhere under the Board's construction? I don't think the Board's construction is... The Claim Construction Disagreement isn't really relevant to the way the Board ruled on Conwell. I think even if I win on the Claim Construction, I still need to convince you that the Board erred with respect to the analysis of Conwell. But if you lose on Claim Construction, Conwell doesn't help you much, right? No. We have an argument even under the Board's construction for Conwell. I'll just give it to you in a nutshell. Conwell was a lookup in a large, sorted database. The person of ordinary skill in the art here had a comp sci degree and three years of experience. You sort a large database so that you can search it more efficiently. Their expert admitted as much. It didn't use the term non-exhaustive search. Neither did this patent. And perhaps it was not an inherent anticipation because theoretically you could plod through a million records one by one. But a skilled artisan would know that you search a large, sorted database by using a non-exhaustive search. That's what anyone would do. We were relying on the doctrine that basically you immediately envisage it. It's not an abscissimis verbis test. It's a question of what one skill in the art would understand looking at the reference. And the only thing you would do with a large, sorted database is sort it non-exhaustively. I see I've exhausted my initial time. I'll save the rest for rebuttal if I may. Thank you, Mr. Magneton. Dovelle, is that how you pronounce it? I'm sorry? Dovelle, is that how you pronounce it? Dovelle, yes, your honor. Under this court's holding in Microsoft v. Polycon, a construction is not reasonable if it is divorced from the specification or if it is inconsistent with how one of ordinary skill would use a term. Let's talk about how one of ordinary skill would use the term. I've read the expert testimony here, and I don't see that there's anything very meaningful in that expert testimony. It says, well, this is the way I would construe it, but it doesn't really provide any evidence that this is a term that is understood in the art, right? I disagree, your honor, and the reason is our expert's testimony goes through the specification to explain in this context of the specification how it's being used. If I might, context is crucial here. Hold on. Put aside the specification for a moment. Is there any evidence that was presented that tells us that this has a meaning in the art? Yes, your honor. Our expert opined that it had a meaning in the art, and he also provided an example of an objective source, the Wikipedia definition, that the board accepted as an objective source indicating the ordinary meaning of exhaustive. The Wikipedia entry is the only piece of evidence that he relied on. Put aside the specification as to what the meaning of this was. Directly. He did indirectly rely upon other articles to support his conclusion about the non-exhaustive searches in the specification. Okay, so what is it in the Wikipedia article that's so helpful to you? Your honor, I'm going to turn to the Wikipedia article, but let me give you an explanation of what we're looking for in that article one way or the other. The term non-exhaustive or exhausted, it depends strictly on context. For example, if you're trying to locate where did you park your car in a parking structure, you do an exhaustive search. If you check every parking space. Let's talk about the Wikipedia article. Where do we find the Wikipedia article? Appendix 1393. That's in the volume one of the joint appendix. 1393. 1393. Okay, so how does this help? And we'll see that what it says in the first paragraph, in computer science, exhaustive search consists of systematically enumerating all possible candidates for the solution and checking whether each candidate satisfies the problem statement. What that means is we will have exhausted if we determine whether each candidate satisfies our algorithm. Why isn't that equally consistent with looking at all the data? Because your honor, we do not need to look at all the data to determine whether each candidate satisfies the problem. We need to look at enough data to know whether it matches our algorithm. The example I gave your honors of looking for your parked car, you don't have to walk around every car. It may be or may not be, but I don't see how this is helping you. Because it doesn't really say that where it's talking about all candidates, that it doesn't mean looking at the data for all the candidates. It necessarily does, your honor. And the reason is this. If the question is this, are we trying to figure out whether a given candidate matches or not, we need to look at enough data to make that determination. That's always the case with every type of exhaustive search. And as Judge Raina pointed out, in the context of this patent, that's why the specification decides this issue. We can't divorce it from the specification. Our context is we're looking at a database to determine which entries or records match. We will have done that if we've examined every entry or record in the same way that we will have examined every parking space, if we look at every parking space. We don't have to walk around every car, look at it from the front, the back, and the sides to do an exhaustive search for a parked car. We don't have to look at every bit of data in a record to do an exhaustive search to determine whether each record matches or not. That's how exhaustive is used in the art. That's the ordinary meaning of it. And the proof of that, Your Honor... We don't have any evidence of that. We do, Your Honor. We have this. We have how it's used in the specification. And we have a complete... What is it in the specification that tells you that this Google construction is incorrect? Your Honor, again, it's about the context. The context of every embodiment in the specification, I'll walk Your Honors through it, is about looking for an entry in a database. So, if we start with column 6, this is appendix page 98, we use this from the 179 patent as our specification. 98? We start at appendix page 98, column 6, we go down to line 21, what we have is this work identification information storage 110. That's a database, it explains. It includes a number of items or records, 112, each of which we associate a feature vector. The vector is the group of data we're going to be looking at. So, the whole context here, and we're going to walk through it, is always about we've got a database, it's got records, it's organized by records, each of which has a set of data, a vector that we're looking at. Let's go over to column 8 then, the very next page, starting at line 49. Here we're going to have something we're trying to compare, and we're going to compare it to entries of known vectors 114 in a content identification WID database 110. The context is trying to find out which entries in the database match. Turn over to the next page, column 9, starting at line 38. If the extracted vector matches a known vector in the content identification base, then the work has been identified. So what we're trying to determine is which entries in this database match. In that context... It may be that the specification is describing non-exhaustive searches the way you're describing them, but that doesn't mean that an exhaustive search doesn't look at all the data. It does by... And that other things might not qualify as non-exhaustive searches that don't look at all the data. It does by definition, Your Honor. Again, exhaustive always depends on context. If you're going to do an exhaustive search for a car, that's different than an exhaustive search for your car keys. It requires looking at different data. But this doesn't say that the only kind of non-exhaustive searches are the searches that are described in this part of the specification. No, but what it does tell us is the context. Are we trying to... What are we trying to find? If we're trying to find items in a database that match, we are exhausting if we've looked at every item. We don't have to look at every bit of data in an item to determine whether or not it matches. We have to look at enough data to satisfy or dissatisfy our algorithm. Our expert opined that way. We've got an objective source. And importantly, Your Honor, their construction is completely divorced from the intrinsic record. Under this court's controlling authority, Microsoft, Eproxycon, and the subsequent cases, if it's divorced from the specification, it can't be reasonable. They don't point to a single line. If it's divorced from a specification that doesn't tell you what the term means, it's not reasonable? No, Your Honor. It's not that it... It doesn't have to have a definition in the specification. It's got to be in this context. In this context, there is no suggestion that to search exhaustively, we must look at all data. It specifically identifies as an exhaustive search a linear search of all N entries. If we've examined each entry, we've exhausted. We don't have to look at each bit of data to exhaust. We have to examine each entry. The contrary, the converse is also shown here. The very next paragraph, column 9, line 413, it identifies non-exhaustive searches. Each one of those searches is one that has a mechanism for pruning out and not looking at records. All the examples of non-exhaustive search, every single one of them is an example where it's going to prune out certain records. Those two things, and the board made a factual finding that this paragraph here does explain exhaustive and non-exhaustive searches. That factual finding is supported by our expert's testimony. The court has to accept that factual finding. Therefore, these passages in the specification do describe exhaustive and non-exhaustive searches. In addition, the board made a factual finding as to the ordinary meaning. That Wikipedia article did express the ordinary meaning. That factual finding is supported by our expert's testimony and by the Wikipedia article itself. I don't recall that the board relied on any expert's testimony in reaching its conclusion. Your Honor, it reached an initial conclusion. Did it rely on expert's testimony? Yes, Your Honor. I'll explain. We are. If I can explain, it reached its initial conclusion, and then ... Where did it rely on expert's testimony? If we look at record page 48, Appendix 48, this is an example of one of the decisions. What it does here, it recites its ... This is the first full paragraph at the top of the page. It recites its construction. Then it says, for this final written decision, after considering the complete record, we maintain our construction of a non-exhaustive search. That's the reference, the expert testimony? Yes, Your Honor. To determine whether there's substantial evidence to support the board's finding, we don't look for cites in the record. The board doesn't have to cite it, it just has to be in the record. That's this court's consistent holding in case after case. It's not a question of, gee, the board didn't cite the expert, therefore we can ignore it. No, the question is, the board made a factual finding. Is there evidence in the record that supports that factual finding? Our expert's testimony does support it. There's factual findings about the ordinary meeting. There is statements in the specification. They have nothing in the record, nothing to support their construction. Without that, it's completely divorced from both the specification and the evidence, and therefore under this court's consistent holdings, it cannot be a reasonable interpretation. In fact, as I've explained, it would be unreasonable to say we're trying to determine which records match and we're also going to require for this something to be exhaustive, that it has to look at every bit of data, even though it makes no sense to look at that data. It would be utter nonsense. In fact, under their construction, it's hard to conceive of any actual algorithm that's used that would be exhaustive, and that's not how the term is used in the article, which is why they were unable to, after our expert presented his testimony, come forward with any example in any patent, in any article, in any publication, anywhere, using non-exhaustive or exhaustive as they would use it. Not one. It's completely divorced from the evidence. Your Honor, let me turn to Iwamura, the first reference that they argue about. The board made a factual finding as to what were the possible matches in Iwamura. The board made a factual finding that the possible matches were the extracted features corresponding with the reference melody. To explain this, it may be helpful to look at an example. In our brief on page 36, we have this example of the extracted features from Iwamura. In this example, there are 20 numbers that represent a vector or extracted features that's used in Iwamura. The board made a factual finding that the extracted features that matter are the ones that correspond to a reference melody, these 20 numbers. Google asserts that what matters is that Iwamura looks at a subset of those. A subset, they say, is going to be a possible match. The board made a factual finding that the possible matches were the entire reference melody. That factual finding is supported by substantial evidence, including a direct admission from their own expert. Counsel, let me ask you a very fundamental, basic question here. Don't you agree that Google's construction of non-exhaustive searches is broader than your construction of construction of the board? It is broader, yes, your honor. It is broader, that's why they're... Then what's the problem with it? Why would it be unreasonable if we are looking for the broadest reasonable interpretation? There are three reasons, your honor. First of all, it's unreasonable because it's divorced from the specification. Any reasonable construction, this is the court's consistent holdings, for example... But we've already decided that the specification supports no definition, either for non-exhaustive or exhaustive. Well, your honor, there's a difference here. It doesn't have... Let's put the specification aside, but what else do you have? It also has to be consistent with how one of ordinary skill in the art would use it. It can't be divorced from that, it can't be inconsistent. You use a Wikipedia site as authority for that? And our expert's testimony, your honor. Both of those... But there's no showing that the board relied on your expert testimony. That's irrelevant, your honor. Under this court's... You just said it was relevant. No. It's not relevant whether there's a site to the board. What the board says is that it considered the complete record... But as a reviewing court, and we're reviewing the board's decision, I am looking for a language. I just can't guess or assume that the board took everything under consideration. Yes, your honor, you can. And I just cite your honor to Siemens Energy of the United States. It has to be supported by substantial evidence determined on the entirety of the record. It doesn't... Whether the board actually cites our expert or not... That's what I'm looking for. What else do you have? Well, we rely upon the specification. Our expert's testimony and the Wikipedia article. All of those things together support our construction. By contrast, there's not one page in this record they can support to, to suggest that exhausted in the context of a database search, reversed to looking at all data. It is completely divorced from the specification. Well, other than the fact that you've conceded, or have agreed with me, that the BRI here is Google's construction. We've not conceded that. It's not the broadest reasonable construction. It's broader. It is not reasonable. Again, under this court's holdings in Microsoft E-Proxicon and Man-Machine Interface, it has to be reasonable. And to be reasonable, it must not be divorced from the specification and the record evidence. That's a quote from those cases. But it can't be that if the specification provides you no help, that it can't be that both parties' definitions are not supported one way or the other by the specification. No, that's not true. You can't look to ordinary meaning. Your Honor, there's, there's, there's an issue here. It's not that we need a definition in the specification. It has to be in the light of the specification. What is this trying to do? It doesn't even use the specification, doesn't even use the word exhaustive. It doesn't tell us what that means, or non-exhaustive either. It does not, Your Honor. But we have a factual finding by the board as to passages that describe exhaustive and non-exhaustive searches. That factual finding by the board is supported by substantial evidence. So the, the specification does identify exhaustive and non-exhaustive searches. Moreover, it gives us a context. Nobody's disputing that the specification describes some non-exhaustive searches. The problem is it doesn't tell you what the universe of non-exhaustive searches is. But it does give us a context, Your Honor. And context is crucial. This is not a specification where we're trying to do a non-exhaustive search of cars in a parking structure. We're trying to do a non-exhaustive search of items in a database. And in that context, the only reasonable construction is that we must check every entry in the database. We must check all items. By definition, if I do a statistical search of, of records in a database, is that, by definition, non-exhaustive? No, Your Honor. It doesn't tell us one way or the other. You've given me a search algorithm. Now you need to tell me, are you going to look at every record in the database or not? If you, if that algorithm has a meaning. So the use of the term in the specification, statistical search, that doesn't mean anything? No, it doesn't tell us whether that is exhaustive or non-exhaustive. You can do a statistical, you can have a statistical algorithm that's applied exhaustively or non-exhaustively. For example, their own expert, Dr. Moline, in his declaration at Appendix 1132, he says, because neighbor searching is computationally intensive, content recognition schemes typically employed search algorithms that increase efficiency by intelligently searching only a subset of potential matches, i.e. non-exhaustive algorithms. He equates non-exhaustive with intelligently searching only a subset of potential matches in the context of neighbor searching. So we can do a neighbor search and it can be non-exhaustive if we have carved out certain potential records and not examined them at all. How do we do that? Using techniques such as a KD tree and so on. Okay, I think Mr. Duvall, we're out of time, thank you. I'd like to just address a couple of points and then finish with a housekeeping matter if I may. The first point I'd like to make is that the board did not find an ordinary meaning of non-exhaustive search. It simply said we're not convinced by your expert. The second point I'd like to make is that my colleague has pointed to a case of this court that says basically substantial evidence considers everything in the record even if the board doesn't consider it. That's not an accurate portrayal of this court's case law. We've got a Chenery Doctrine. We rely on findings that the board actually made. The case on which he's relying is simply, it cites the Supreme Court's universal camera case and it basically says you look at everything in the record, in other words, what both sides have submitted. In a jury verdict situation, you can infer maybe that the jury relied on something. In the case of an agency decision, you've got to have findings by the board. The board did not make findings about the ordinary meaning of non-exhaustive search. We do agree that it depends on context, but the context here is not a parking space. The context here is something, for example, where you're comparing two melodies, I'm a terrible singer, I enter things wrong, you've got to be able to figure out whether that's a near match. You can't do that based on one. The board's construction says one note, one bit is enough. My colleague is saying that you don't necessarily need all of them. That may show that there's a range of reasonable interpretations, but this is a BRI standard here.  On Iwamura, just one quick point on that, and that is that Iwamura, yes, it does talk about basically a 20-note segment that's going to be one of the reference melodies, but it's not comparing the whole 20 notes. It's comparing the 10 notes that you enter. It says to disregard everything that's, basically you're aligning two arrays and disregarding everything that doesn't line up. Then he's telling you don't search all of those. Don't search 1-11 or 2-12, 3-13, only do the ones where it lines up. He's only searching 80%. Really you have to do an apples-to-apples search, not an apples-to-orange search. You don't do 10 against 20. You're searching extracted features of 10. If I may, I'd just like to mention the housekeeping matter. There is a little bit of discrepancy in the briefs about which claims are on appeal and which references go with which claims. I've discussed that with opposing counsel. What I would do is propose to submit a letter from the parties jointly. I don't think there's a real disagreement. We would just clarify for the court which claims are at issue and which ones go with which references. Otherwise, it may be hard to parse out when drafting a decision. Okay. You can submit a joint letter. Thank you, Mr. Bagatelle. Thank you. Thank you.